## THE ALESIA.[1]

### BONANNO v. LA COMPAGNIE FRANÇAISE DE NAVIGATION À VAPEUR CYP. FABRE & CIE.

*(District Court, E. D. New York. June 5, 1888.)*

1. SHIPPING—DAMAGE TO CARGO—FROST—BILL OF LADING—EXCEPTION.
    The steam-ship A. arrived in the port of New York in February, with one .old filled with green fruit, and general merchandise in the others. The 16th was a warm day, and the ship commenced to discharge the fruit, but the discharge was stopped by request of certain consignees, with the assent of the libelant. All the fruit could have been discharged on that day. The following three days were cold, and no fruit was discharged until the 20th and 21st, when, the weather having moderated, the discharge was completed, and the fruit transferred to a warehouse. It was afterwards found to be frozen, and for its loss this action was brought. The bill of lading contained the ordi-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

nary exception of the act of God, and excepted liability for damage to the fruit by frost, unless caused by negligence of the ship. *Held*, that opening the hatches on the 16th was not negligence. *Held*, on the evidence, that the fruit was frozen in the vessel, and not in the warehouse or on the passage thereto, and from liability for such damage the vessel was protected by the exceptions in her bills of lading.

2. SAME—SEPARATE HOLDS—DUTY AS TO DISCHARGE OF CARGO.
   A vessel is not bound to suspend discharging cargo in cold weather from holds wherein there is no fruit, in order to preserve fruit in other separate holds from danger of injury by frost.

In Admiralty. Action for delivery of cargo in damaged condition.

*Ullo, Ruebsamen & Hubbe*, for libelant.

*R. D. Benedict*, for respondent.

BENEDICT, J. This is an action upon a bill of lading of the steamship Alesia to recover for damages to lemons caused by frost. The Alesia had three holds, each separated from the other, with iron bulkheads going from the top to the bottom of the ship. No. 3 hold was partly filled with about 7,400 boxes of green fruit, of which 1,692 boxes were consigned to the libelant. The other holds contained general cargo. On the 11th the discharge of the cargo in holds No. 1 and No. 2 was begun. On the 16th the discharge from these holds had been finished, and, the day being fine for the discharge of fruit, the discharge of the fruit from No. 3 hold was commenced. All the fruit would have been discharged on that day but for the fact that the discharge was stopped upon the request of the consignees of by far the greater portion of the fruit, and with the assent of the libelant. The request was acceded to for the convenience of the consignees. But for the request it was the intention of the ship to complete the discharge of the fruit on the 16th. The remainder of the fruit was discharged on the 20th and 21st. The ship arrived on February 10th, and from that time to the 16th of February the weather was very cold, sometimes as low as zero. The 16th was a warm day, the 17th, 18th, and 19th were cold days; on the 20th the weather moderated. No fruit was discharged on the three cold days between the 16th and 20th. On the 20th and 21st the weather was milder, and, working in the middle of the day only, the fruit remaining in No. 3 hold was taken out of the ship and transferred to Pinto's stores, a warehouse situated about 600 feet away from the ship. Some days afterwards, when the fruit was taken from Pinto's stores by the consignees, it was found to be frozen. The libelant brings this action to recover for loss by him sustained by reason of the frozen condition of the fruit consigned to him.

The bill of lading contained the ordinary exception of peril of the seas, act of God, etc., and exempted the ship from liability for damage to the fruit by frost, unless caused by negligence on the part of the ship. One question raised in the case is whether or not the fruit was frozen while in Pinto's stores. Upon this question of fact my opinion is with the claimants. The weight of evidence forbids the conclusion that the fruit was frozen in Pinto's stores. Another disputed question of fact in the case is whether or no the fruit was frozen while being removed from

the ship to Pinto's stores. Upon this question my opinion is also with the claimants. The shortness of time during which the fruit was exposed to these two days, the state of the weather while the fruit was being discharged,—the evidence being positive that the snow was melting, and the sun shining,—the dispatch used in transferring the fruit from the ship to Pinto's stores, warrants the conclusion that the fruit was not frozen during its transfer from the ship to Pinto's stores on the 20th and 21st. From these conclusions the conclusion follows that the fruit was frozen while on board the ship. The case then turns upon the question whether the ship is liable for damages arising from the freezing of the fruit while in the ship. Here the burden is upon the libelant to show the failure on the part of the ship to take reasonable precautions to prevent the fruit from being injured by frost while in the ship. It has been suggested that the freezing of the fruit might have been caused by the removal of the hatches from No. 3 hold on the 16th, whereby the warm air then in the hold was allowed to escape, and so the temperature of that hold was reduced to freezing point, the weather thereafter being very cold. If such be the fact, it was not negligence on the part of the ship to remove the hatches from No. 3 hold on the 16th. The ship had the right to remove the hatches on that day, for the day was warm, and all the fruit would have been discharged on that day without risk of damage, had it not been for the request of the consignee that the discharge be stopped. Accordingly, if the freezing of the fruit resulted from the opening of the hatches on the 16th, no liability attached to the ship by reason thereof. It is finally contended that the opening of No. 1 and No. 2 hatches for the discharge and loading of the cargo in these holds, which occurred while the weather was very cold, sometimes as low as zero, would cause the fruit in No. 3 hold to be frozen. But if such be the fact, still no negligence on the part of the ship is shown. In my opinion, in a case like this, where two out of three holds of the steamer contain general cargo, and the other green fruit, the holds being separate and distinct, and constructed of iron, it is too much to require the steamer to suspend the unloading and loading of holds wherein was no fruit, in order to preserve fruit in the remaining hold from danger of injury by frost. The risk of the fruit in No. 3 hold being frozen while the other holds were open for the purpose of discharging cargo from these holds, in my opinion, should be held to be the risk of the shipper, not of the ship; the bill of lading having exempted the ship from responsibility arising from the act of God. It follows that the libel must be dismissed, and with costs.